(Signed)  ROSE B. HEINRICH, *Taxpayer.*
WILLIAM J. SCHUMAKER,
*Commissioner of Deeds.*

Approved July 22, 1924.

D. H. BLAIR,
*Commissioner of Internal Revenue.*

As a waiver it was approved by the Commissioner July 22, 1924.

The original return for 1918 showed a tax of $2,755.76, which amount was duly paid. The Commissioner under date of March 3, 1923, notified the executrix of an overassessment for 1918 in the amount of $1,263.56, which amount was later refunded to the executrix. In the same letter the executrix was notified of an additional tax for the year 1919 of $5,751.27.

In a deficiency letter dated January 16, 1925, the Commissioner notified the executrix of a deficiency in tax for the year 1918 amounting to $4,063.17 and an overassessment for 1919 of $5,462.67. The taxpayer duly appealed to this Board from the deficiency for 1918.

DECISION.

The deficiency determined by the Commissioner is disallowed.

On reference to the Board, ARUNDELL took no part in the consideration.

---

APPEAL OF INTERNATIONAL CONSOLIDATED CHEMICAL CO.

Docket No. 2506.  Submitted May 19, 1925.  Decided September 7, 1925.

Evidence *held* insufficient to sustain valuation claimed for intangible assets.

*Fred A. Woodis* and *Luther F. Speer, Esqs.,* for the taxpayer.
*M. N. Fisher, Esq.,* for the Commissioner.

Before IVINS, MARQUETTE, and MORRIS.

This appeal is from a determination by the Commissioner of deficiencies in income and profits taxes for the years 1919, 1920, and 1921 amounting in the aggregate to $45,426.86.

From the evidence submitted at the hearing, the Board makes the following

### FINDINGS OF FACT.

The taxpayer was a Delaware corporation, now liquidated and dissolved, having its principal office in New York City during the years 1919, 1920, and 1921.

It was organized on June 30, 1919, when it acquired the assets or the capital stock of nine separate businesses and issued 19,360 shares of its capital stock therefor, of par value $100 per share.

The number of shares of stock in the taxpayer issued for the assets or stock of the respective predecessor businesses were:

Taxpayer's stock.

9,250 shares to stockholders or owners of Dae Health Laboratories.
1,139 shares to stockholders or owners of Campagnie Neal, Inc.
  291 shares to stockholders or owners of E. Virgil Neal.
  350 shares to stockholders or owners of E. Virgil Neal.
1,000 shares to stockholders or owners of E. Virgil Neal.
1,400 shares to stockholders or owners of Tokalon, Inc.
  200 shares to stockholders or owners of E. L. Kincaid.
1,000 shares to stockholders or owners of Cie Pann Zenn.
5,000 shares to stockholders or owners of William Baxter.

19,630          Total.

The taxpayer's stock was thereafter owned in the percentages noted and by the individuals named, reference also being made to their prior proportionate interest in the respective predecessor businesses:

| | Per cent in tax-payer | Former ownership |
|---|---|---|
| William Baxter | 25.47 | 100 per cent in William Baxter. |
| J. Ralph Bracken | .05 | One-tenth of 1 per cent in Dae Health Laboratories. |
| Edgar R. Derland | .66 | 1.40 per cent in Dae Health Laboratories. |
| B. K. Firmin | 9.42 | 20 per cent in Dae Health Laboratories. |
| Sidney J. Kean | 7.82 | 16.60 per cent in Dae Health Laboratories. |
| E. L. Kincaid | 5.17 | 10 per cent in Campagnie Neal, Inc. 50 per cent in Tokalon, Inc. 100 per cent in E. L. Kincaid. |
| Marion B. Kincaid | 5.09 | 100 per cent in Cie Pann Zenn. |
| Francis B. Masten | 1.74 | 30 per cent in Campagnie Neal, Inc. |
| L. M. Murphy | 1.16 | 20 per cent in Campagnie Neal, Inc. |
| E. Virgil Neal | 11.90 | 20 per cent in Campagnie Neal, Inc. 100 per cent in E. Virgil Neal. 100 per cent in E. Virgil Neal. 100 per cent in E. Virgil Neal. 33.35 per cent in Tokalon, Inc. |
| J. Oppenheim | 9.42 | 20 per cent in Dae Health Laboratories. |
| Henry J. Smith | 1.19 | 16.65 per cent in Tokalon, Inc. |
| Lee L. Smith | 1.16 | 20 per cent in Campagnie Neal, Inc. |
| W. J. Ward | 19.75 | 41.90 per cent in Dae Health Laboratories. |
| Total | 100.00 | |

There were three separate predecessor businesses done under the name of " E. Virgil Neal."

The Federal tax returns filed by Dae Health Laboratories, Inc., for the periods noted showed net income as follows:

Fiscal year ended Aug. 31, 1916_____ $274,166.90
Fiscal year ended Aug. 31, 1917_____ 339,540.72
Fiscal year ended Aug. 31, 1918_____ 206,783.10
Period from Sept. 1, 1918, through June 30, 1919_____ 113,958.80

The excess-profits-tax returns filed by that corporation showed:

|  | Capital stock | Capital stock and surplus |
|---|---|---|
| Year ended Aug. 31, 1917 | $10,000 | $34,609.07 |
| Year ended Aug. 31, 1918 | 10,000 | 13,240.98 |
| Period ended June 30, 1919 | 10,000 | 550,253.96 |

The return last above referred to contained the notation " Final report as independent corporation. Affiliated with International Consolidated Chemical Co."

In its returns for the six months of 1919 and the year 1920, the taxpayer showed: Capital stock for 1919, $1,963,000; capital stock and surplus for 1920, $2,143,547.48. The Commissioner deducted $486,365.51 therefrom in 1919 and $486,439.61 in 1920, both included in the returns as alleged good will, the value of which had not been established, and by reason of those deductions, and others as to which no question has been raised by this appeal, determined deficiencies in income and profits taxes for the six months of 1919, the year 1920, and the year 1921, in the aggregate amount of $45,426.86. From those determinations the taxpayer appeals.

#### DECISION.

The determination of the Commissioner is approved.

#### OPINION.

IVINS: The Commissioner contended that section 331 of the Revenue Act of 1918 applied to this taxpayer. It is unnecessary to determine this question. The other question raised relates to the value of intangibles acquired upon the organization of the taxpayer. Upon that issue the evidence made available for presentation by the taxpayer's representatives was very meagre. The taxpayer was dissolved in 1921 and all of its books and records were removed to Europe. No data whatever were presented to us affording information as to the method by which the organization of the taxpayer was effected in 1919, no balance sheets or accounting records relating to the predecessor business (with the exception of the tax returns of one

company), nothing as to the accounts of the taxpayer, and no information as to any of the companies that might assist in a determination of the valuation of tangible property, much less the value of intangibles.

The taxpayer alleged in its petition a valuation for intangible assets acquired on organization by the issuance of stock therefor as follows:

| | |
|---|---|
| Formulae | $365, 000. 00 |
| Good will | 113, 685. 51 |
| Trade-marks | 1, 680. 00 |
| Mailing lists | 6, 000. 00 |

The Commissioner denied the allegations by his answer. The only attempt made at the hearing to prove such value was through the introduction, as evidence, of the tax returns of Dae Health Laboratories, showing therein the net income of that company as reported for the several years.

Calling the average net income of Dae Health Laboratories about $250,000, the taxpayer then attempted to prove the valuation of intangibles in the following way:

It deducted the alleged value of intangibles ($486,365.51) from the par value of the taxpayer's capital stock ($1,963,000) and called the balance the *value* of the tangible assets. It then figured that 10 per cent would be a fair and proper return upon tangible property, and so deducted 10 per cent of $1,476,634.49 (the difference between the par of capital stock issued, $1,963,000 and $486,365.51, the alleged value of intangibles) from the *alleged* average income of the Dae Health Laboratories and, getting a resultant of some $105,000, proceeded to capitalize that amount at 15 per cent, thereby arriving at a claimed value for intangibles of some $705,000, by which it justified its valuation of $486,365.51.

The very foundation of any formula or method of determining the valuation of intangible property is knowledge, exact as possible, of the cost of tangible property, associated with the intangible, in the production of income. Its very foundation is knowledge, exact as possible, of the cost value of tangible property. That necessary element is lacking in the present appeal. The deduction of the alleged value of intangibles from the par value of stock constitutes the use of an assumption to prove its own verity as a fact, instead of proving that fact by the use of other facts. The attempt involves a circuitous process of reasoning which is utterly lacking in logic. Its only defense is that it is the best that could be done under the circumstances. It is insufficient to convince us that the determination made by the Commissioner was incorrect. That determination must be sustained upon the authority of *Appeal of*

*W. E. Marshall & Company*, 1 B. T. A. 175; *Appeal of York Hotel Corporation*, 1 B. T. A. 672; *Appeal of John H. Wood Company*, 1 B. T. A. 1098; *Appeal of Rothenberg & Company*, 1 B. T. A. 1197. See also, *Appeal of Central Consumers Wine & Liquor Company*, 1 B. T. A. 1190; and *Appeal of Wright's Automatic Tobacco Packing Machine Company*, 1 B. T. A. 1260.

On reference to the Board, ARUNDELL took no part in the consideration.